UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLOCKWORK IP, LLC, AIRTIME, LLC, and AQUILA INVESTMENT GROUP, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:14-CV-1618 JAR ) |
| CLEARVIEW PLUMBING & HEATING LTD. and GIRAFFE CORPORATION, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. No. 21) The motion is fully briefed and ready for disposition.

**Background**

This action arises out of an intellectual property dispute. Plaintiffs Clockwork IP, LLC ("Clockwork"), AirTime, LLC ("AirTime"), and Aquila Investment Group, LLC ("Aquila") (collectively "Plaintiffs") bring this action against two Canadian companies, Defendants Clearview Plumbing & Heating LTD ("Clearview") and Giraffe Corporation ("Giraffe"), for trademark infringement under 15 U.S.C. § 1114 (Count I), unfair competition under 15 U.S.C. § 1125(a) (Count II), conversion (Count III), fraudulent inducement (Count IV), and tortious interference with a business expectancy (Count V).

Clockwork is a Delaware limited liability company with its principal place of business in Sarasota, Florida. (Complaint ("Compl."), Doc. No. 1 at ¶ 3) Clockwork is the intellectual property holding subsidiary of Clockwork, Inc., d/b/a Clockwork Home Services, under three

principle brand names: Benjamin Franklin the Punctual Plumber®, One Hour Heating & Air Conditioning® and Mr. Sparky®. (Id. at ¶¶ 1, 19) Clockwork Home provides plumbing, heating and air conditioning, and electrical services in North America. (Id. at ¶ 1) Aquila is an Illinois limited liability company d/b/a Success Group International ("SGI"), with its principal place of business in Sarasota, Florida. (Id. at ¶ 5) SGI offers business services to contractors who do not want to become franchisees. Instead, these contractors become SGI Affinity Group members and receive the same business process tools and technical training as franchisees without relinquishing their name and brand identity. (Doc. No. 22 at ¶ 6) AirTime is a Missouri limited liability company with its principal place of business in Sarasota, Florida. At all relevant times, AirTime operated the SGI Affinity Group.[1] (Id. at ¶¶ 4, 6) Clearview is primarily engaged in the business of plumbing, air conditioning and heating services in Canada. (Id. at ¶ 7); Giraffe is an intellectual property holding company owned and controlled by Clearview. (Id. at ¶ 8) Both Clearview and Giraffe are organized and existing under the laws of Canada. (Id. at ¶¶ 7, 8)

According to Plaintiffs, this dispute arises from Defendants' activities with SGI. (Doc. No. 26 at 2) Plaintiffs allege that Defendants' first identified interaction with AirTime and SGI occurred around 2000 when Clearview's principal, Kyle Lumsden, attended an event hosted by SGI in New Jersey where Clockwork Home announced its franchise branding for THE PUNCTUAL PLUMBER. (Compl. at ¶¶ 11, 33) Sometime thereafter, Clearview misappropriated and adopted THE PUNCTUAL PLUMBER marks for itself. (Id. at ¶ 34) Plaintiffs further allege that sometime in 2008, Clearview targeted their Tech Seal Program and misappropriated their TECH SEAL mark. (Id. at ¶¶ 38-40)

---

[1] Aquila purchased SGI's assets and business on March 11, 2014. (Compl. at ¶ 6)

From March 2011 until May 2013, Clearview was a member of SGI's licensed Canadian affiliate, SGI Canada. As a member of SGI Canada, Clearview had the opportunity to license Clockwork trademarks for use in its business. (Id. at ¶¶ 12, 30)

In October 2011, Clearview was offered three licensing agreements for AirTime marks; the marks offered were WE FIX IT OR IT'S FREE; GREEN SCREENED; and the TECH SEAL mark. (Id. at ¶ 41) Clearview executed license agreements for the marks WE FIX IT OR IT'S FREE and GREEN SCREENED. Because Clearview was already using a "colorable imitation" of the TECH SEAL mark, it did not execute the agreement for the TECH SEAL mark. (Id. at ¶ 42) All actions arising out of or relating to these licensing agreements were required to be brought in either the Twenty-First Judicial Circuit Court of the State of Missouri or the United States District Court for the Eastern District of Missouri, Eastern Division.[2] (Id. at ¶ 12) Plaintiffs contend that Clearview's repeated misappropriation of Clockwork's intellectual property has hindered it from marketing and growing its Benjamin Franklin Plumbing business and diminished the value of its marks.

Defendants move to dismiss the complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). Defendants argue they have not transacted business in Missouri, made any contracts in Missouri, or committed any tortious acts in Missouri. Even if they had engaged in such activities, Defendants argue they lack sufficient minimum contacts with Missouri to satisfy due process. (Doc. No. 22 at 2) The principal of Clearview, Kyle Lumsden, and the principal of Giraffe, Melanie Lumsden, have filed declarations in support of these arguments. (Doc. Nos. 22-1, 21-2) In response, Plaintiffs argue that because Defendants directed their tortious conduct, in part, at a Missouri company, and otherwise have the requisite minimum

---

[2] Plaintiffs are not asserting jurisdiction over Defendants based on the forum selection clause in the license agreements. (Doc. No. 26 at 6-7)

contacts to support jurisdiction in Missouri and the United States, their motion should be denied. (Doc. No. 26 at 6-7)

**Legal standard**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction by pleading facts sufficient to support a "reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir.2011) (internal quotation and citations omitted). If personal jurisdiction is challenged, the plaintiff has the burden of proving facts supporting such jurisdiction. Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir.2010). This "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Id. (internal quotation marks omitted). Where, as here, the district court does not hold a hearing and instead relies on pleadings and affidavits, the Court must look at the facts in the light most favorable to the non-moving party and resolve all factual conflicts in its favor. K-V Pharm. Co., 648 F.3d at 591-92.

**Discussion**

A federal court may assume jurisdiction over a nonresident defendant only to the extent permitted by the forum state's long-arm statute and the Due Process Clause of the Constitution. Dakota Industries, Inc. v. Ever Best Ltd., 28 F.3d 910, 915 (8th Cir.1994) (citing Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir.1991)). The Eighth Circuit suggests these two questions should be analyzed separately. Dairy Farmers of Am., Inc. v. Bassett & Walker Intern., Inc., 702 F.3d 472, 475 (8th Cir.2012). Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter alia*, transact business, make a contract, or commit a tortious act within the state. See Mo.Rev.Stat. § 506.500.1(1), (2), (3). "These individual

categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted to provide for jurisdiction, within the specific categories enumerated in the statute, to the full extent permitted by the Due Process Clause." Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593 n. 2 (8th Cir. 2011). The Court will, therefore, focus on whether exercising personal jurisdiction over Defendants comports with federal due process standards. Dakota Indus., 28 F.3d at 915. See also Gray v. Hudson, 2015 WL 4488143, at *9 (E.D.Mo. July 23, 2015); Meredith, Inc. v. Marketing Resources Group of Oregon, Inc., 2005 WL 2334294, at *2 (E.D.Mo. Sept. 23, 2005). If it does, Defendants would be subject to the long-arm statute, and if it does not, Plaintiffs' claims should be dismissed for lack of personal jurisdiction. See Express Scripts, Inc. v. Care Continuum Alliance, Inc., 2011 WL 2199967, at *2 (E.D.Mo. June 7, 2011); Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir.2000).

Due process requires a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." See Myers v. Casino Queen, Inc., 689 F.3d 904, 911 (8th Cir.2012) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The relevant contacts with the forum state must be more than "random, fortuitous or attenuated." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations omitted). "The fundamental inquiry is whether the defendant has 'purposefully availed' itself of the 'benefits and protections' of the forum state," Viasystems, Inc., 646 F.3d at 594 (quoting Burger King Corp., 471 U.S. at 482), "to such a degree that it 'should reasonably anticipate being haled into court there.' " Id. (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

The Eighth Circuit has established a five factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction over the defendant: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." Dairy Farmers, 702 F.3d at 477 (quoting K–V Pharm., 648 F.3d at 592).

The Supreme Court recognizes two categories of personal jurisdiction. Specific jurisdiction exists when the nonresident defendant has sufficient contact with the forum state and the cause of action arises out of or relates to that contact. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1984). General jurisdiction is applicable where the plaintiff's cause of action does not arise out of and is not related to the defendant's contacts with the form. General jurisdiction exists when the nonresident defendant's contacts with the forum state are so "continuous and systematic" that the defendant may be subject to suit for causes of action that are unrelated to the forum contacts. Id. at 414 n. 9.

Once the court has found the requisite minimum contacts, it must still determine whether the exercise of jurisdiction comports with "fair play and substantial justice." Int'l Shoe, 326 U.S. at 320. Even if requisite minimum contacts are found, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, due process requires that jurisdiction be denied. Burger King, 471 U.S. at 477-478.

**Specific jurisdiction**

Plaintiffs do not allege Defendants had any actual contacts with Missouri. Rather, Plaintiffs' assertion of personal jurisdiction is based on the effects of Defendants' extraterritorial actions in Missouri. Missouri's long-arm statute covers extraterritorial tortious acts producing

actionable consequences in Missouri. N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc., 975 F.Supp.2d 993, 998 (E.D.Mo. 2013) (quoting TLC Vision (USA) Corp. v. Freeman, 2013 WL 230254, at *6 (E.D.Mo. Jan. 22, 2013)). In order to assert jurisdiction over a nonresident defendant on the basis of tortious acts, the plaintiff must show the acts were performed "for the very purpose of having their consequences felt in the forum state." Dakota Indus., 946 F.2d at 1390–91 (citing Calder v. Jones, 465 U.S. 783 (1984)); Johnson v. Arden, 614 F.3d 785, 796 (8th Cir.2010) (internal quotation omitted). Plaintiffs claim the nature of the license agreements, including the forum selection clauses therein, demonstrate that Defendants, and particularly Clearview, knew they were engaging with a Missouri company and that their misrepresentations and omissions were aimed at and would have consequences in Missouri. (Doc. No. 26 at 6-7)

The Eighth Circuit "construe[s] the Calder effects test narrowly, and hold[s] that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." Furminator, Inc. v. Wahba, 2011 WL 3847390, at *3 (E.D. Mo. Aug. 29, 2011) (quoting Johnson, 614 F.3d at 794). See also Renaissance Pen Co. v. Krone, L.L.C., 2006 WL 6322521, at *4 (E.D.Mo. Apr. 11, 2006) ("[A] plaintiff may not invoke tortious long-arm jurisdiction consistent with due process where the non-resident defendant had no contact with Missouri besides the extraterritorial acts having consequences in Missouri.") (quoting Peabody Holding Co. Inc. v. Costain Group PLC, 808 F.Supp. 1425, 1437-38 (E.D.Mo. 1992)). Instead, Plaintiffs must present some evidence that Defendants had other contacts with Missouri, and intentionally aimed their tortious activities at Missouri so their effect would be felt here. For example, in Angelica Corp. v. Gallery Mfg. Corp., 904 F. Supp. 993, 997 (E.D. Mo. 1995), the court found defendant had "purposefully directed" its activities at a Missouri resident when it made solicitation calls, actively pursued contracts with the plaintiff's representatives located in

its main office in Missouri, entered into a contract with a Missouri resident in Missouri, sent samples to plaintiff in Missouri; and carried on an active correspondence with plaintiff in Missouri via the telephone, fax, and mail.

Defendants have no other contacts with Missouri to support the exercise of specific jurisdiction. Clearview asserts, and Plaintiffs do not dispute, that Clearview has never performed services, employed any persons, maintained any offices or contracted with any party in the state. Clearview is not registered as a foreign entity, nor is it licensed to do business in the state of Missouri. It has no agents or shareholders in Missouri. It does not have a registered agent for service in Missouri. Clearview does not maintain any physical presence in Missouri, does not operate or own facilities in Missouri, does not own or lease real estate in Missouri, and does not have a Missouri mailing address, telephone number or bank account.

Further, there is no evidence that Defendants directly targeted any action at Missouri, knowing it would be felt here. Unlike in K–V Pharm, 648 F.3d at 595-96, where the parties had a long-term contract which required a continuing relationship in Missouri, as well as a face-to-face meeting in Missouri, shipment of product to Missouri, and payments to K–V, which was based in Missouri, Defendants have had no direct contact with Missouri.

Accordingly, the Court finds Clearview's contacts with Missouri are insufficient for this Court to exercise specific jurisdiction. The limited contact Clearview has with Missouri, based solely on the impact of its alleged tortious activity, is so attenuated that the maintenance of a suit would offend traditional notions of fair play and substantial justice. Peabody Holding Co., 808 F. Supp. at 1437-38.

**General jurisdiction**

A court may assert general jurisdiction over foreign corporations only if they have developed "continuous and systematic" general business contacts with the forum state, rendering them essentially at home in the forum state. Viasystems, Inc. 646 F.3d at 595 (citations omitted). Here Plaintiffs claim the Court has general jurisdiction over Clearview based on the following "extensive contacts" with the United States: (1) the attendance of Clearview's principal at two SGI events: one in New Jersey in 2000 and one in Texas around 2005; (2) Clearview's receipt of educational training materials and participation in SGI training programs; (3) Clearview's licensing of Clockwork's trademarks in 2011; (4) Clearview's operation of "interactive" websites that solicit internet users to contact Clearview to inquire about its services and maintain a "referral network" with U.S. based companies; and (5) Clearview's membership in a rival affinity group to SGI (Nexstar Network) based in Minnesota. (Doc. No. 26 at 10) According to Plaintiffs, Giraffe has likewise engaged in "significant acts related to the events of this dispute sufficient to subject it to this Court's jurisdiction." (Compl. at par. 17)

Defendants dispute these alleged contacts; however, even after resolving all factual conflicts in Plaintiffs' favor, the Court finds these are not the type of systemic and continuous general business contacts that would make a company "at home" here. With regard to Clearview's attendance at two SGI events, Defendants cite to Holland America Line Inc. v. Wartsila North America, Inc., 485 F.3d 450 (9th Cir. 2007), which found nothing in the record to link the foreign defendant to the United States except a one-time presentation at a single "leadership forum" in Florida, where the defendant also sponsored a reception and dinner tables. The court held this isolated incident did not support jurisdiction under the federal long arm statute, Fed.R.Civ.P. 4(k)(2). Id. at 462. See also Nichols v. G.D.Searle & Co., 991 F.2d 1195

(4th Cir.1993) (two regional and national meetings in state were not continuous corporate operation for exercise of general jurisdiction).

With regard to the two license agreements entered into between Clearview and AirTime in 2011 and terminated in 2013, evidence of a single and/or short-term contractual relationship does not rise to the level of "continuous and systematic" contact necessary to establish general personal jurisdiction. Saudi v. Northrop Grumman Corp., 427 F.3d 271, 276 (4th Cir. 2005); Nichols, 991 F.2d at 1200 (single contract insufficient to generate general jurisdiction, even in combination with a series of other contacts).

Further, the mere operation of a web site, without "something more," is clearly insufficient as a basis for exercising personal jurisdiction. Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc., 96 F. Supp. 2d 919, 923 (E.D. Mo. 2000) (citing Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997). See also Mallinckrodt Medical Inc. v. Nycomed Imaging AS, 1998 WL 962203, at *3 (E.D.Mo. Nov. 13, 1998) ("merely creating an Internet site is not an act purposefully directed toward the forum state and should not subject the party to personal jurisdiction throughout the nation and even the world"). Plaintiffs argue Clearview's website page is "interactive" because it contains a "directory" of contractor and home improvement websites with U.S. based companies. Clearview maintains its website is "passive" because it simply shares information and takes no sales online. See Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D.Pa. 1997) (a passive web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction).

In cases of interactive websites, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the

site. Id. Although available to internet users in Missouri, Clearview's website is not clearly directed at Missouri residents. Plaintiffs have no evidence of anyone from Missouri accessing the site or of any business being done over the Internet. See Enterprise Rent-A-Car Co. v. Stowell, 137 F.Supp.2d 1151, 1158-59 (E.D.Mo. 2011) (noting that inability to order directly from website and lack of evidence that anyone from Missouri had looked at the site "did not suffice to establish personal jurisdiction.").

Beyond the passive operation of a website, Plaintiffs fail to allege Defendants are present and conducting business in Missouri, or otherwise possess sufficient contacts to establish general jurisdiction. Defendants have no agents, representatives, employees, or offices in Missouri. They have not sold any products or services to anyone located in Missouri. They have never advertised or marketed here directly. Defendants maintain no bank accounts or credit lines here and own no real property in Missouri. As in the above-cited cases, Clearview cannot be said to have purposely availed itself of the privilege of conducting business in Missouri and thus cannot reasonably be expected to be subject to the general jurisdiction of Missouri courts.

**Federal long arm statute**

Alternatively, Plaintiffs argue jurisdiction is proper under the federal long arm statute, Fed.R.Civ.P. 4(k)(2). (Doc. No. 26 at 8-11) Rule 4(k)(2) of the Federal Rules of Civil Procedure permits a federal court to exercise personal jurisdiction over a foreign defendant for (1) a claim arising under federal law, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, and (4) provided the exercise of federal jurisdiction is consistent with the Constitution and laws of the United States. Fed.R.Civ.P. 4(k)(2); Mwani v. bin Laden, 417 F.3d 1, 10 (D.C.Cir.2005). Whether the exercise of jurisdiction is consistent with the Constitution depends on whether the defendant has sufficient contacts with

the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment. Mwani, 417 F.3d at 11. Again, the question of due process concerns whether the foreign defendant purposefully directed his activities at residents of the forum, and whether the litigation results from alleged injuries that arise out of, or relate to those activities. Id. at 12.

Plaintiffs rely on their previous arguments to support jurisdiction under Rule 4(k)(2), namely that Defendants established continuous and systematic contacts with SGI, attending conferences, availing itself of resources and training, and licensing trademarks. (Doc. No. 26 at 10) Plaintiffs do not raise any new arguments, or assert that Defendants had other contacts with the United States as a whole. For the reasons stated above, Plaintiffs have failed to make a prima facie case that Defendants have sufficient minimum contacts with the United States as a whole, to justify the exercise of personal jurisdiction under Rule 4(k)(2). See 1st Tech., LLC v. Digital Gaming Solutions S.A., 2008 WL 4790347, at *5 (E.D. Mo. Oct. 31, 2008).

**Alter ego/agency**

Plaintiffs do not allege Giraffe had any direct contacts with Missouri, or anywhere else within the United States. Instead, they argue jurisdiction is proper over Giraffe as the alter ego of Clearview or through agency. (Doc. No. 26 at 11-13) Jurisdiction over a parent corporation may be proper if the record shows "the parent dictates every facet of the subsidiary's business-from broad policy decisions to routine matters of day-to-day operation." In re Genetically Modified Rice Litigation, 576 F.Supp.2d at 1072 (internal quotations and citations omitted).

Plaintiffs allege Giraffe is, "ostensibly the owner of the trademarks that are subject to this dispute and licenses them to Clearview for the uses that are the subject of this dispute." Plaintiffs further allege Giraffe is, upon information and belief, entirely owned and controlled by

Clearview and/or Clearview's principals." (Compl. at ¶ 16) Giraffe disputes this statement, stating "[n]either Clearview Plumbing & Hearing, [sic] Ltd. ('Clearview') nor its principals have any ownership or controlling interest in Giraffe." (M. Lumsden Aff. at ¶ 7) Instead, Defendants state that Melanie Lumsden owns Giraffe and is "responsible for overseeing the day-to-day operations of the company and for maintaining its business records." (Id. at ¶ 2) Whether or not this is true, Giraffe would only be subject to the Court's jurisdiction as an alter ego of Clearview if Clearview were first found to be subject to this Court's jurisdiction. (Doc. No. 29 at 11) As discussed above, the Court has found it is not. For this reason, the Court finds Defendants' argument unpersuasive.

**Jurisdictional discovery**

Plaintiffs request an opportunity to conduct jurisdictional discovery to examine the contacts between Defendants and Clockwork Home's U.S.-based franchisees and potential franchisees under the PUNCTUAL PLUMBER Marks as well as the participation of Defendants' principals and employees in SGI events and activities across the country. Plaintiffs assert that jurisdictional discovery would also be appropriate on the issue of alter ego and the relationship between Clearview and Giraffe. (Doc. No. 26 at 13-14) "The decision whether to grant jurisdictional discovery in a case is left to the trial court's sound discretion." Osborn & Barr Commc'ns, Inc. v. EMC Corp., 2008 WL 341664, at *1 (E.D. Mo. Feb. 5, 2008) (and cases cited therein). Numerous cases hold that district courts have the discretion to deny jurisdictional discovery when, as here, the complaint fails to make a prima facie case of personal jurisdiction. Id. Plaintiffs' request will, therefore, be denied.

**Conclusion**

For these reasons, the Court finds Plaintiffs have failed to allege minimum contacts sufficient to permit this Court to exercise personal jurisdiction over Defendants in accordance with due process. The Court concludes it lacks personal jurisdiction over Defendants and that jurisdictional discovery is not appropriate in this case. Therefore, Defendants' motion to dismiss will be granted and Plaintiffs' claims dismissed without prejudice.[3]

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [21] is **GRANTED**.

A separate Order of Dismissal will accompany this Memorandum and Order.

Dated this 31st day of August, 2015.

                                                  **JOHN A. ROSS**
                                                  **UNITED STATES DISTRICT JUDGE**

---

[3] As an alternative to their jurisdictional arguments, Plaintiffs request the Court transfer this matter to the Middle District of Florida, where all of them have their principal place of business, pursuant to 28 U.S.C. § 1404(a). (Doc. No. 26 at 15) Plaintiffs have not, however, filed a motion and have not supported their request with adequate information. Accordingly, their request will be denied.